Hillsborough,
March 3, 1936.

EMMA E. WOODARD LAMB

*v.*

UNITED STATES FIRE INSURANCE COMPANY.

*Ivory C. Eaton* (by brief and orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

MARBLE, J.   The plaintiff was the adopted daughter of Mr. and Mrs. Henry O. Woodard.   On February 23, 1928, the Woodards deeded the insured dwelling house to her.   Mrs. Woodard died in 1931, and on March 22, 1932, the plaintiff conveyed a life estate in the property to Mr. Woodard.   At the time of the fire they were occupying the insured premises and the plaintiff was taking care of Mr. Woodard, who was nearly blind.

So far as appears, the only policy of insurance which the plaintiff ever procured was that on which suit has been brought.   This policy, which insured the house and its contents, was issued on January 14, 1931, and was not to expire for five years.   Presumably the policy

which preceded it was in force for a like period. If so, it was issued in 1926 and must have insured the interest of Mr. and Mrs. Woodard, who then owned the property. Whether the policy was later assigned to the plaintiff does not definitely appear. The policy itself was not introduced as an exhibit and the agent who issued it did not testify. Indeed, the evidence relating to the entire subject of the plaintiff's alleged fraud is exceedingly meager. The plaintiff herself was the only witness called to the stand.

She testified that while she was living with Mr. and Mrs. Woodard she purchased various articles of furniture including a kitchen range, a sideboard, a day bed, a radio stand, a desk, and several chairs. Although the earlier policy doubtless contained the usual provision extending coverage to personalty owned by any member of the insured's household, there is no evidence that the plaintiff was familiar with the terms of insurance policies or knew that this particular policy while standing in her parents' name afforded her any protection. The policy insured the contents of the house for only $500, whereas the total value of the household effects including the property owned by the plaintiff (according to an agreement entered into by the parties after the fire) amounted to $1,200.

The plaintiff testified that she "didn't mind about getting more insurance until the policy ran out" and that she then told the insurance agent that she had "bought some" furniture, whereupon he suggested that the insurance on the household and personal property be increased from $500 to $1,600. Defendant's counsel then interrogated her as follows: "Q. Mrs. Lamb, when you went to Mr. Spalding to get this very policy, you told him you had bought some new furniture? A. Yes, sir. Q. And you had not bought any for eight years? A. No. ... Q. And he advised you to put on more insurance, because you told him you had bought some more furniture, that is right? A. Yes."

The defendant argues that inasmuch as the insurance was actually increased in accordance with the agent's suggestion the above-quoted testimony conclusively establishes the plaintiff's fraud.

It will be noted that the words "new furniture" and "more furniture" are the words of the defendant's counsel. See *Lamarche* v. *Lamarche*, 87 N. H. 454. The plaintiff herself in explaining the situation declared: "I bought it [the furniture], I had it when I got the insurance." This is entirely consistent with the view that she understood that her furniture was being insured for the first time and considered it "more" furniture and "new" furniture only in relation to

the furniture owned by her parents, which had been in the house for twenty years.

The fact that the insurance she obtained exceeded the property value later agreed upon is not a controlling factor. The valued-policy statute applies only to buildings. P. L., c. 276, s. 8. As to personalty, it is for the insured after the fire to establish his loss. *Moreau* v. *Insurance Co.*, 84 N. H. 422, 423.

The present case differs radically from the *Moreau* case, on which the defendant relies. In the latter case the plaintiff's claim was so contrary to experience and to nature as to be utterly beyond credence. No such situation is here disclosed. As already indicated, fraud (which must be clearly established by proof) was not the only conclusion which could fairly be drawn from the evidence. *Canning* v. *Insurance Co.*, 87 N. H. 180, 184. The trial court did not err in denying the motion for a nonsuit.

Nevertheless the verdict must be set aside. On the day of the fire the plaintiff purchased five gallons of kerosene. After filling an oil stove she placed the oil can, which then contained about three gallons of kerosene, in the cellarway. At seven o'clock that evening she took Mr. Woodard in her automobile and drove to town for the ostensible purpose of shopping. The stores, however, were closed. She then drove about Nashua for several hours in a vain attempt to reach the residence of a person on whom Mr. Woodard desired to call. When she finally returned home she discovered that her house was on fire, and the fire department was already there. The day after the fire pools of kerosene were found on the bedroom floors and the oil can was empty.

The family income at the time consisted of $12.50 a month, which Mr. Woodard received as a pension for blindness, and an indefinite sum obtained by the plaintiff from the occasional sale of wreathes and patchwork quilts, supplemented by relief contributions from the city of Nashua. Before the fire the plaintiff was engaged to marry the man whom she later married. Mr. Woodard objected to her marrying and she concealed from him the fact that she was "keeping company with Mr. Lamb." At the time of the fire Lamb was out of work. Obviously the evidence relating to the plaintiff's pecuniary condition and that of the man she desired to marry was relevant to show a motive for burning the insured property. Naturally, too, the plaintiff would be much more inclined to resort to such an act if she were not on good terms with Mr. Woodard and had no scruples about breaking up his home.

For the purpose of showing the attitude of the plaintiff and Mr. Woodard toward each other defendant's counsel cross-examined the plaintiff as follows: "Q. And after Mrs. Woodard died in 1931, Mr. Woodard wanted you to reconvey that property to him, didn't he? A. Yes, sir. Q. And you would not? A. I did. ... I gave him a life lease. Q. After you gave him the life lease, did he then attempt to get you to deed the property to him? A. No; not particularly."

From this evidence (the jury were entitled to consider the plaintiff's failure to answer the last question unequivocally) it could be inferred that Mr. Woodard was not altogether content with his limited interest in the property.

Desiring to further show the relations which existed between the plaintiff and Mr. Woodard at the time of the fire defendant's counsel continued: "Q. When did you and Mr. Woodard break up, and you go to live one place and he another? A. I don't know; it was sometime afterwards. Q. You and your husband left there and started to furnish a place?"

Plaintiff's counsel interrupted to ask: "How is that material?" Thereupon the presiding justice ruled: "I don't see how that is material. The evidence of what happened after the fire is stricken from the record." And later, after a conference with counsel: "The Court has already excluded any evidence that related to a time after the fire. If you want to inquire about before the fire, I will let you."

The mere fact that the proposed inquiry related to events which occurred subsequent to the plaintiff's alleged wrongful act was not a valid reason for its exclusion. *State* v. *Foster*, 80 N. H. 1, 4. See also *State* v. *Wargo*, 83 N. H. 532, 533; *State* v. *Braley*, 81 N. H. 323; *Hoxie* v. *Walker*, 75 N. H. 308, 311, 312; *State* v. *Call*, 48 N. H. 126, 132. Certainly the plaintiff's attitude toward her father after the fire, viewed in the light of his opposition to her marriage and his apparent dissatisfaction with the property arrangement, had some tendency to show the plaintiff's previous hostility toward him. *Caplan* v. *Caplan*, 83 N. H. 318, 324. See also *Chamberlain* v. *Enfield*, 43 N. H. 356, 360.

The question of the trial court's discretionary right to limit or stop a cross-examination conducted more in the hope of eliciting helpful testimony than towards a definite line of inquiry is not passed upon. The presiding justice did not exclude the evidence because its admission would unduly protract the trial or because defendant's counsel failed to "state his hope." *Stevens* v. *Company*, 275 Mass. 398, 402.

Here, as in *Masterson* v. *Railway*, 83 N. H. 190, 195, the ruling was unqualified as well as premature. Subject to the defendant's exception, the court struck from the record indiscriminately all evidence of what happened after the fire and limited the scope of cross-examination to events which happened before. In this situation the defendant's exception must be sustained.

*New trial.*

BRANCH and PAGE, JJ., did not sit: the others concurred.